UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HIGH FALLS BREWING COMPANY, LLC, HIGH FALLS
OPERATING CO, LLC, NORTH AMERICAN BREWERIES,
INC., AND KPS CAPITAL PARTNERS LP,

                                        Plaintiffs,

                                                              NO. 6:10-CV-6100 (CJS)

    vs.

BOSTON BEER CORPORATION,

                          Defendant

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## HFBC, OPCO, NAB, AND KPS'S MOTION FOR A PRELIMINARY INJUNCTION

April 27, 2010                  Jerauld E. Brydges
                                Kimberly I. Shimomura
                                HARTER SECREST & EMERY LLP
                                1600 Bausch & Lomb Place
                                Rochester, New York 14604-2711
                                Telephone: (585) 232-6500
                                *Attorneys for High Falls Brewing Company, LLC*

                                Terrence M. Connors
                                Randall D. White
                                Connors & Vilardo, LLP
                                1000 Liberty Building, 424 Main St.
                                Buffalo, NY  14202
                                (716) 852-5533

                                Gregory M. Boyle
                                Erinn L. Wehrman
                                Jenner & Block LLP
                                **Pro Hac Vice Petition Pending**
                                353 North Clark Street
                                Chicago, IL  60654
                                (312) 222-9350
                                *Attorneys for High Falls Operating Co, LLC, North
                                American Breweries, Inc., and KPS Capital Partners LP*

## TABLE OF CONTENTS

Table of Cases................................................................................................................ii

Preliminary Statement.....................................................................................................1

Argument ........................................................................................................................3

    I.    The Court Should Determine the Issue of Arbitrability. .................................3

    II.    Irreparable Harm is Presumed. ......................................................................5

    III.    HFBC has Established a Likelihood of Success on the Merits......................6

    IV.    Balancing of the Hardships............................................................................9

Conclusion ....................................................................................................................10

## TABLE OF CASES

**Cases**

*Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*, 2008 U.S. Dist.
   LEXIS 22026 (S.D.N.Y. 2008) ...................................................................5, 6, 10

*Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16 (2d Cir. 1995) .......................8

*Daniel J. D'Amico Plumbing & Heating Co., Inc. v. Local Union No. 13*, 2008 U.S.
   Dist. LEXIS 73580 (W.D.N.Y. 2008) ...................................................................8

*Delta Holdings, Inc. v. National Distillers and Chemical Corp.*, 945 F.2d 1226 (2d
   Cir. 1991) ...................................................................7

*Eaton Vance Mgt. v. Forstmannleff Assoc., LLC*, 2006 U.S. Dist. LEXIS 55741
   (S.D.N.Y. 2006) ...................................................................4, 5

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed.
   2d 985 (1995) ...................................................................3

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ...................................................................8

*Katz v. Feinberg*, 290 F.3d 95 (2d Cir. 2002) ...................................................................4, 7

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d
   Cir. 2001) ...................................................................8

*Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) ...................................................................5-6

*Penrod Mgt. Group v. Stewart's Mobile Concepts, Ltd.*, 2008 U.S. Dist. LEXIS
   11793 (S.D.N.Y. 2008) ...................................................................3

*Shaw Group, Inc. v. Triplefine International Corp.*, 322 F.3d 115 (2d Cir. 2003) ...................................................................4

*Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intl., Inc.*,
   198 F.3d 88 (2d Cir. 1999) ...................................................................8

*Whirlpool Corp. v. Philips Electronics, N.V.*, 848 F. Supp. 474 (S.D.N.Y. 1994) ...................................................................7

## PRELIMINARY STATEMENT

Plaintiffs High Falls Brewing Company, LLC (HFBC), High Falls Operating Co, LLC (OpCo), North American Breweries, Inc. (NAB), and KPS Capital Partners LP (KPS) (collectively, Plaintiffs) respectfully submit this Reply Memorandum of Law in further support of their request for a preliminary injunction to enjoin defendant Boston Beer Corporation (Boston Beer) from proceeding with an arbitration (the Arbitration) against (1) OpCo, NAB, and KPS, generally, and (2) HFBC on claims arising from certain equipment leases.

In its opposition papers, Boston Beer concedes that it cannot arbitrate any of the claims that it previously asserted against OpCo, NAB, and KPS in the Arbitration. Despite the fact that Boston Beer withdrew those claims the day it filed its response, Plaintiffs remain entitled to an injunction preventing Boston Beer from arbitrating such claims. Without such an injunction, nothing prevents Boston Beer from amending its Notice of Claim (again) and re-asserting such claims. Boston Beer's initial filing of arbitration claims against companies with whom it has no arbitration agreement shows a lack of good faith. This lack of good faith is further evidenced by Boston Beer's refusal to withdraw such claims until almost two months after Plaintiffs informed Boston Beer that such claims were not subject to arbitration.[1]  Boston Beer's failure to timely withdraw its non-arbitrable claims against OpCo, NAB, and KPS has caused these parties to incur significant legal fees to commence this action and to preliminarily enjoin Boston Beer from proceeding with the Arbitration. Had Boston Beer simply filed for arbitration of the arbitrable claims and filed a lawsuit regarding all non-arbitrable claims, Plaintiffs would not have been

---

[1] Boston Beer filed its Statement of Claim commencing the Arbitration on February 8, 2010. Declaration of Samuel T. Hubbard, Jr., dated April 5, 2010 (Hubbard Decl.), ¶ 21 and Ex. G. On February 26, 2010, Plaintiffs responded to Boston Beer's Statement of Claim informing Boston Beer that OpCo, NAB, and KPS were not parties to an arbitration agreement and the claims against HFBC arising out of the equipment leases were not arbitrable. Plaintiffs commenced this action on March 1, 2010 and filed this motion on April 5, 2010. CM/ECF Docket Items 1 and 7. Boston Beer waited until the last day for it to respond to Plaintiffs' motion (April 20, 2010) to withdraw its claims against OpCo, NAB, and KPS in the Arbitration. Wade Decl., ¶ 14 and Ex. 8.

1

forced to incur significant legal fees to correct Boston Beer's filing. Contrary to Boston Beer's unsupported assertion in its reply, the request for an injunction against Boston Beer pursuing arbitration against OpCo, NAB, and KPS is not moot. An injunction is appropriate to prevent OpCo, NAB, and KPS from suffering further damages through Boston Beer's misuse of the arbitration process to pursue claims against them. Plaintiffs demonstrated in their opening brief that an injunction is appropriate here. Boston Beer has not responded to -- let alone rebutted – Plaintiffs' arguments. This Court should issue an injunction barring Boston Beer from proceeding in arbitration against OpCo, NAB, and KPS.

Moreover, in opposing that portion of the motion brought by HFBC, Boston Beer materially mischaracterizes the facts of this matter. Boston Beer accuses HFBC of arbitrarily refusing to honor its long-standing obligation to work with Boston Beer. To the contrary, HFBC made a reasonable request of Boston Beer to consent to an assignment of the Third Amended and Restated Production Agreement (the Production Agreement), as specifically contemplated by that agreement. Instead of consenting, however, Boston Beer treated the request as an opportunity to seek concessions from HFBC and OpCo, which would have changed the terms of the Agreement in its favor, in exchange for its requested consent. Failing to obtain the concessions – to which it had no right – Boston Beer unreasonably withheld its consent to the assignment, an act that HFBC alleges constituted a breach of the Production Agreement. Boston Beer then filed a baseless arbitration claiming $9,000,000 in damages against Plaintiffs, likely in a further effort to obtain negotiating leverage with OpCo.

As discussed below, the issue of the arbitrability of Boston Beer's claims against HFBC arising under the Equipment Lease Agreement for Bottling Line 2 (the Line 2 Lease) and the Equipment Lease Agreement for Required Additional Equipment (the Additional Equipment

2

Lease) (collectively, the Equipment Leases) should be decided by the Court, not an arbitrator.

Further, HFBC is entitled to the requested injunction because irreparable harm in this matter is

presumed, and HFBC has shown both a likelihood of success on the merits and a balance of the

hardships weighing decidedly in its favor.  For these reasons, and the reasons discussed in its

original papers, HFBC respectfully requests that this Court grant it a preliminary injunction

enjoining Boston Beer from proceeding with the Arbitration on the Equipment Lease Claims.

ARGUMENT

**I.      The Court Should Determine the Issue of Arbitrability.**

The presumption that "arbitrability is a matter for the Court to decide" is well-

established.  *Penrod Mgt. Group v. Stewart's Mobile Concepts, Ltd.,* 2008 U.S. Dist. LEXIS

11793, *2 (S.D.N.Y. 2008); *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115

S. Ct. 1920, 131 L. Ed. 2d 985 (1995).  Boston Beer nonetheless argues that an arbitrator should

decide the whether the Equipment Lease Claims are arbitrable.[2]  Boston Beer's Memorandum of

Law (BBC's MOL), pp. 7-8.  Boston Beer's position is based upon its flawed assertion that

"clear and unmistakable" evidence exists showing that the parties intended to arbitrate the

arbitrability of the Equipment Lease Claims.  BBC's MOL, pp. 7-8.

Boston Beer's purported showing of "clear and unmistakable" evidence consists solely of

references to the Production Agreement, not the Equipment Leases, even though the Equipment

Leases are the basis for the Equipment Lease Claims.  *Id.*  The Equipment Leases clearly provide

for *judicial* "RESOLUTION OF ANY DISPUTES UNDER ANY LEASE DOCUMENT."

Hubbard Decl., Exs. B and C, ¶ 5.7 of each.  Thus, while the Production Agreement contains a

---

[2] In its Amended Statement of Claim, Boston Beer alleges the following claims, which are referred to herein as the Equipment Lease Claims: (1) breach of the implied covenant of good faith and fair dealing contained within the Equipment Leases; (2) immediate possession and foreclosure of the Equipment; and (3) conversion of the Equipment.  Wade Decl., Ex. 8.

3

general arbitration provision, the unambiguous preference for judicial resolution in the Equipment Leases belies the notion of any "clear and unmistakable" evidence that the parties intended that an arbitrator determine the arbitrability of the Equipment Lease Claims.

Further, allowing an arbitrator to determine the arbitrability of the Equipment Lease Claims would render the judicial resolution clause of the Equipment Leases completely superfluous and would wholly frustrate the parties' intent that "any disputes under any lease document" be determined by a court.  Such a result is contrary to long-standing contract interpretation principles.  *The Shaw Group, Inc. v. Triplefine International Corp.,* 322 F.3d 115, 121 (2d Cir. 2003) ("[C]ertain principles of New York contract law [are] relevant to determining whether an arbitration agreement clearly and unmistakably demonstrates that arbitrators rather than the courts are to resolve questions of arbitrability: (1) 'in interpreting a contract, the intent of the parties governs;' (2) '[a] contract should be construed so as to give full meaning and effect to all of its provisions.'").

In fact, the arbitration provision of the Production Agreement itself creates an ambiguity that requires the Court, not an arbitrator, to decide the issue of arbitrability.  In *Eaton Vance Mgt. v. Forstmannleff Assoc., LLC,* 2006 U.S. Dist. LEXIS 55741 (S.D.N.Y. 2006), the parties entered into an agreement that contained the following arbitration provision: "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach hereof, <u>other than claims for specific performance or injunctive relief</u> pursuant to Section 8 hereof, shall be settled by arbitration…." *Eaton,* at *10.  Interpreting this language, the Court held that

> [w]here, as here, 'a single agreement contains both a broadly worded arbitration clause and a specific clause assigning a certain decision to [another authority]…the presence of both…clauses creates an ambiguity' as to whether the parties assigned questions of arbitrability to the arbitrator.

*Id.* at *10-*11; *see also Katz v. Feinberg,* 290 F.3d 95, 97 (2d Cir. 2002).  Based on this

4

ambiguity, the court found that the "Arbitration Clause contains no 'clear and unmistakable'

delegation of the arbitrability question…." *Eaton,* at *11. Therefore, the court found that it, not

the arbitrator, must decide the issue of arbitrability. *Id.*

>   Here, the arbitration provision in the Production Agreement provides

>   Any controversy or claim arising out of or relating to this December 2004
>   Agreement, or the breach hereof, <u>with the exception of any claim for a temporary
>   restraining order or preliminary or permanent injunctive relief to enjoin any
>   breach or threatened breach hereof,</u> shall be settled by binding arbitration….

Hubbard Decl., Ex. A, ¶ 26 (emphasis added). As in *Eaton,* the Production Agreement "contains

both a broadly worded arbitration clause and a specific clause assigning a certain decision to

[another authority]…." *Eaton,* at *10-*11. The ambiguity created within the arbitration

provision itself renders Boston Beer unable to show "clear and unmistakable" evidence that the

parties intended an arbitrator to determine the issue of arbitrability. Accordingly, the Court, not

an arbitrator, must decide whether the Equipment Lease Claims are arbitrable.[3]

## II.     Irreparable Harm Is Presumed.

Boston Beer attempts to defeat HFBC's request for a preliminary injunction by arguing

that HFBC will not suffer irreparable harm if the requested relief is denied. BBC's MOL, pp.

17-18. Boston Beer is wrong.

As discussed in Plaintiffs' original motion papers, "[t]he Second Circuit has held that a

party forced to arbitrate a dispute that is beyond the purview of the arbitration agreement suffers

irreparable harm." *Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.,* 2008 U.S.

Dist. LEXIS 22026, at *12 (S.D.N.Y. 2008) (*citing Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.,*

337 F.3d 125, 129 (2d Cir. 2003)). The courts have unequivocally found that if forced to

---

[3] The same conclusion follows from any attempt to reconcile the arbitration provision in the Production Agreement
and the judicial resolution provisions in the Equipment Leases. These provisions are in conflict, thereby creating an
ambiguity requiring that this Court decide the issue of arbitrability.

240194_1

arbitrate a dispute that is not properly arbitrable, the party contesting arbitration will "be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Merrill Lynch Inv. Managers,* 337 F.3d at 129.

Boston Beer has demanded that HFBC arbitrate the Equipment Lease Claims, which, as discussed below, are not subject to arbitration. Wade Decl., Ex. 8. Forcing HFBC to arbitrate claims that it has not agreed to arbitrate would cause HFBC to expend valuable time and resources that it should not be required to expend and would result in an unenforceable award. Based on well-settled Second Circuit law, HFBC will suffer irreparable harm, as a matter of law, if forced to arbitrate the Equipment Lease Claim with Boston Beer. *Barrack,* at *12.

## III.   HFBC Has Established a Likelihood of Success on the Merits.

Boston Beer's entire argument on the merits is based upon its assumption that the arbitration provision in the Production Agreement is considered "broad" under the relevant case law. BBC's MOL, pp. 8-17. This assumption, however, is based solely upon an analysis of the Production Agreement's arbitration provision and completely ignores the specific provision in the Equipment Leases that permits all disputes under the Leases to be resolved by the courts. When all of the relevant provisions are considered together, the specific clause in the Equipment Leases governs and permits the Court to adjudicate the Equipment Lease Claims.

The Production Agreement contains a general arbitration provision, which requires the parties to arbitrate any dispute "arising out of or relating to" the Production Agreement. Hubbard Decl., Ex. A, ¶ 26. The Equipment Leases, however, contain a more specific provision providing for the *judicial* "REOLUTION OF ANY DISPUTES UNDER ANY LEASE DOCUMENTS." Equipment Leases, Hubbard Decl., Exs. B and C, ¶ 5.7 of each.

6

"[W]hen an agreement includes two dispute resolution provisions, one specific… and one general…, the specific provision will govern those claims that fall within it." *Katz v. Feinberg,* 290 F.3d 95, 97 (2d Cir. 2002); *see also Whirlpool Corp. v. Philips Electronics, N.V.,* 848 F. Supp. 474, 479 (S.D.N.Y. 1994) (specific provisions govern over general arbitration clauses); *Delta Holdings, Inc. v. National Distillers and Chemical Corp.,* 945 F.2d 1226, 1248-1249 (2d Cir. 1991) (general contract principles require the specific to govern over the general and "[a] specific provision will not be set aside in favor of a catchall clause…[d]efinitive, particularized contract language takes precedence over expressions of intent that are general….").

Here, the general arbitration provision of the Production Agreement governs all claims, except for claims that arise under the specific judicial resolution provision in the Equipment Leases.  Here, the Equipment Lease Claims asserted by Boston Beer consist of (1) breach of the implied covenant of good faith and fair dealing contained within the Equipment Leases; (2) immediate possession and foreclosure of the Equipment; and (3) conversion of the Equipment. The Equipment Leases permit the judicial "resolution of <u>any disputes</u> under any lease documents."  Hubbard Decl., Exs. B and C, ¶ 5.7.  Boston Beer's claim of breach of the implied covenant of good faith and fair dealing *contained within the Equipment Leases* is a dispute "under" the lease document in which the covenant is contained.  Likewise, Boston Beer's immediate possession and foreclosure claim and its conversion claim turn on whether HFBC owns the Equipment, and whether HFBC owns the Equipment will be determined by an analysis of the purchase option contained within the Equipment Leases.  Given the nature of the Equipment Lease Claims alleged by Boston Beer, each of the claims is a dispute "under" the lease documents and therefore can be resolved by the Court.  On this basis alone, HFBC has shown a likelihood of success on the merits.

240194_1

Ignoring the relevant provision of the Equipment Leases, Boston Beer argues that because the Production Agreement contains a broad arbitration clause, all claims that "touch matters" related to the Production Agreement must be arbitrated.  BBC's MOL, p. 9.  In support of this argument, Boston Beer cites *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16 (2d Cir. 1995), *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004), *Daniel J. D'Amico Plumbing & Heating Co., Inc. v. Local Union No. 13*, 2008 U.S. Dist. LEXIS 73580 (W.D.N.Y. 2008) (Judge Siragusa), and *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intl., Inc.*, 198 F.3d 88 (2d Cir. 1999).  However, none of these cases (nor the principles discussed therein) apply when two agreements are at issue, one with a general arbitration clause and one with a specific clause permitting judicial resolution of certain disputes.  Further, *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d Cir. 2001) does not apply here because the decision similarly did not address how a specific judicial resolution clause impacts a general arbitration clause.

Boston Beer's analysis of whether the Equipment Lease Claims "touch matters" does not apply to this matter.  The "touch matters" analysis is used when only a "broad" arbitration clause exists, not when such clause is limited by a specific judicial selection provision.  *Daniel D'Amico,* at *11-*12 (the presumption of arbitrability, which allows for the arbitration of collateral matters, arises only if the arbitration clause is broad) (citing *Collins,* 58 F.3d at 23).

Boston Beer also argues (in the alternative) that the Carbo Cooler is not subject to the Additional Equipment Lease and the rights regarding the Carbo Cooler are exclusively contained within a letter amendment to Production Agreement dated December 12, 2007 (the 2007 Amendment).[4]  BBC's MOL, p. 15; Wade Decl., Ex. 6.  Boston Beer claims that the amendment

---

[4] Boston Beer makes this argument despite the fact that it has not only admitted that the Carbo Cooler is subject to the Additional Equipment Lease, but invited HFBC to purchase the Carbo Cooler for more than $300,000 by

is purely an amendment to the Production Agreement and therefore the claims regarding the Carbo Cooler are subject only to the Production Agreement's arbitration clause. BBC's MOL, p. 15.

However, the Equipment Leases clearly provide for judicial "RESOLUTION OF ANY DISPUTES UNDER ANY LEASE DOCUMENT." Hubbard Decl., Exs. B and C, ¶ 5.7 (emphasis added). It is beyond debate that "any lease document" includes the 2007 Amendment, which – Boston Beer asserts – creates a lease for the Carbo Cooler. Even if the Carbo Cooler is governed by a separate lease document, not the Additional Equipment Lease, the judicial resolution clause of the Equipment Leases permits the Court to resolve the Carbo Cooler claims.

Likewise, the Production Agreement states that "all Boston Beer Equipment [which includes the Carbo Cooler] shall be added to and be subject to the terms and conditions of the Equipment Lease for Boston Beer Equipment…." Hubbard Decl., Ex. A, ¶ 9(b). Therefore, the terms of the Equipment Leases apply to the Carbo Cooler regardless of whether it was contained within the express terms of such agreements.

For these reasons, and the reasons discussed in its original motion papers, HFBC has clearly shown a likelihood of success on the merits of its claims for injunctive relief.

**IV.    Balancing of the Hardships**

Finally, Boston Beer argues that HFBC will suffer little, if any, hardship if the requested injunction is denied because HFBC has to arbitrate the claim for breach of the Production Agreement, and being required to arbitrate the Equipment Lease Claims will add little burden. BBC's MOL, p. 18. Boston Beer balances this hardship against the purported greater hardship it will suffer if forced to litigate the Equipment Claims while simultaneously arbitrating the

---

asserting that the Carbo Cooler was subject to the Additional Equipment Lease and exercising its right to offset other unrelated payments due to HFBC against such amount. BBC's MOL, p. 16, n.4; Hubbard Decl., Ex. D.

Production Agreement Claim.  Boston Beer's reasoning makes little sense.

Currently, Boston Beer has alleged the following counterclaims in this litigation: (1) tortious interference with the Production Agreement against OpCo, NAB, and KPS; (2) breach of the implied covenant of good faith and fair dealing contained within the Production Agreement and the Equipment Leases against HFBC; (3) immediate possession and foreclosure against HFBC and OpCo; and (4) conversion against HFBC and OpCo.  Boston Beer's Answer and Counterclaims, Docket Item No. 9.  Even if the injunction is denied and the Equipment Lease Claims are arbitrated, Boston Beer will still be prosecuting identical claims (immediate possession and foreclosure against OpCo and conversion against OpCo) and related claims (tortious interference with the Production Agreement against OpCo, NAB, and KPS) in the Federal Court action.  Therefore, Boston Beer will suffer no greater hardship if the injunction is granted than it will if the injunction is denied.

On the other hand, if the injunction is denied and HFBC is required to arbitrate the Equipment Lease Claims, HFBC will be forced to expend significant time and resources to defend claims in arbitration that *it has no obligation to arbitrate* and any arbitration award rendered on such claims would be unenforceable.  *Barrack,* 2008 U.S. Dist. LEXIS 22026, at *23.  For these reasons, the balance of the hardships weighs decidedly in HFBC's favor.

### CONCLUSION

For these reasons and the reasons discussed in their original moving papers, Plaintiffs respectfully request that this Court issue a preliminary injunction enjoining Boston Beer from proceeding with the Arbitration against (1) OpCo, NAB, and KPS, generally, and (2) HFBC as to the Equipment Lease Claims, and any such further relief as the Court deems just and proper.

10

April 27, 2010
Rochester, New York

Respectfully submitted,

/s/ Kimberly I. Shimomura
Jerauld E. Brydges
Kimberly I. Shimomura
HARTER SECREST & EMERY LLP
1600 Bausch & Lomb Place
Rochester, New York 14604-2711
Telephone: (585) 232-6500
*Attorneys for High Falls Brewing Company, LLC*

/s/ Randall D. White
Terrence M. Connors
Randall D. White
Connors & Vilardo, LLP
1000 Liberty Building, 424 Main St.
Buffalo, NY  14202
(716) 852-5533

Gregory M. Boyle
Erinn L. Wehrman
Jenner & Block LLP
**Pro Hac Vice Petition Pending**
353 North Clark Street
Chicago, IL  60654
(312) 222-9350
*Attorneys for High Falls Operating Co, LLC, North American Breweries, Inc., and KPS Capital Partners LP*

240194_1