UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HIGH FALLS BREWING COMPANY, LLC,
HIGH FALLS OPERATING CO., LLC,
NORTH AMERICAN BREWERIES, INC.,
and KPS CAPITAL PARTNERS LP,                    DECISION AND ORDER

                              Plaintiff,        10-CV-6100 CJS

            -v-

BOSTON BEER CORPORATION,

                              Defendants.

---

APPEARANCES

For High Falls Brewing
Company, LLC:                    Jerauld E. Brydges, Esq.
                                 Kimberly I. Shimomura, Esq.
                                 Harter, Secrest and Emery, LLP
                                 1600 Bausch & Lomb Place
                                 Rochester, New York 14604-2711

For High Falls Operating
Co, LLC, North American
Breweries, Inc. and KPS
Capital Partners LP:             Randall David White, Esq.
                                 Terrence M. Connors, Esq.
                                 Connors & Vilardo, LLP
                                 1000 Liberty Building
                                 424 Main Street
                                 Buffalo, New York 14202

                                 Gregory M. Boyle, Esq.
                                 Erinn L. Wehrman, Esq.
                                 Jenner & Block, LLP
                                 353 North Clark Street
                                 Chicago, Illinois 60654-3456

For Defendant:                   George J. Skelly, Esq.
                                 J. Christopher Allen, Esq.
                                 Nixon Peabody LLP
                                 1100 Clinton Square
                                 Rochester, New York 14604

INTRODUCTION

This is a diversity action arising from a contractual dispute,  in which Plaintiffs seek permanent injunctive relief and a declaratory judgment that they are not required to arbitrate certain aspects of the dispute.  Defendant asserted four counterclaims: 1) tortious interference with contract, 2) breach of the implied covenant of good faith and fair dealing; 3)  "immediate possession  or foreclosure"; and 4) conversion.  High Falls Operating Company ("OpCo"), KPS Capital Partners, LP ("KPS"), and North American Breweries, Inc. ("NAB") (collectively "Movants") moved (Docket No. [#24]) to dismiss the first, third, and fourth counterclaims, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). However, prior to oral argument of the motion, Defendant notified the Court that it was withdrawing all of its counterclaims, except the first.  Subsequently, the parties executed a stipulation, agreeing to the dismissal of Defendant's second, third, and fourth counterclaims.   Consequently, Movants' motion to dismiss the third and fourth counterclaims is denied as moot.  The remaining aspect of Movants' motion, seeking dismissal of the first counterclaim, is granted.

BACKGROUND

The following facts are taken from Defendant's Corrected Answer [#20] with counterclaims, and are viewed in the light most-favorable to Defendant.  Defendant was a party to a contract ("the Production Agreement") with High Falls Brewing Company, LLC ("HFBC").  Pursuant to the Production Agreement, HFBC was required to produce beer and other beverages for Defendant, through the year 2014.  In 2009, HFBC contracted to sell substantially all of its assets to OpCo.[1]  OpCo is a subsidiary of KPS, a private equity

---

[1]According to Movants, "HFBC's business was struggling, and OpCo was able to acquire its assets at a favorable price." Movants' Memo of Law [#24-5] at 8.

fund.  At that time, OpCo, KPS, and North American Breweries ("NAB"), were aware of the Production Agreement between HFBC and Defendant, and were interested in assuming HFBC's interest in the agreement as part of the asset purchase.  However, OpCo and Defendant were not able to reach an agreement concerning assignment of the Production Agreement.[2]  Consequently, OpCo purchased HFBC's assets without assuming HFBC's obligations under the Production Agreement.  OpCo apparently then began doing business under NAB's name.  Defendant subsequently had discussions with OpCo concerning whether OpCo would honor HFBC's obligations under the Production Agreement.  OpCo, though, declined to assume such obligations.  Subsequently, HFBC failed to fulfill its obligations under the Production Agreement, since it no longer had the equipment or other assets with which to carry out its obligations.  Consequently, Defendant maintains that by buying HFBC's assets, OpCo, KPS, and NAB "intentionally and improperly procured the breach by [HFBC[ of the Production Agreement." Corrected Answer [#20] at p. 19, ¶ 51.

However, Movants maintain that such facts fail to state a claim for tortious interference with contract.  On June 18, 2010, Movants filed the subject motion to dismiss, arguing that Defendant has not pleaded a plausible claim, since it has not alleged that Movants' actions were wrongful and without justification. Pls. Memo of Law [#24-5] at 6 ("Boston Beer's claim for wrongful interference with contract . . . fails on its face because Boston Beer does not allege the wrongfulness of and lack of justification for the Companies' actions that are required to maintain such a claim.").  More specifically, Movants' contend that a plausible claim must allege that they acted with "an intention to

---

[2]Defendant agrees that OpCo was interested in taking over HFBC's rights under the Production Agreement, but states that it did not agree to the assignment, since HFBC "intend[ed] to assign the Production Agreement to [OpCo], but without any corresponding assumption of [HFBC's] obligations." Answer and Counterclaims, Answer ¶ 20.

harm plaintiff without economic or other lawful excuse or justification." *Id*. (citations omitted); *see also, id*. at 7 ("Boston Beer must allege facts sufficient to permit the court to draw a reasonable inference that the Companies procured HFBC's breach of contract (1) with the intent to harm Boston Beer and (2) without justification."). Movants argue that Defendant's counterclaim fails on this point, since it alleges only that OpCo's purchase of HFBC's assets "had the indirect effect of leaving HFBC without the means to perform under the Production Agreement." *Id*. at 8.[3]   Movants further maintain that tortious interference cannot be found where the defendant acted to protect a legitimate business interest. *Id*.

In response, Defendant maintains, first, that an allegation of "malice" is not required to state a claim for tortious interference with contract.[4]  Additionally, Defendant states that Movants cannot establish the "economic self-interest" defense, since they did not have a preexisting relationship with, or financial stake in, HFBC.  Def. Memo of Law [#27] at 2.[5]

On April 14, 2011, counsel for the parties appeared before the undersigned for oral argument.

---

[3]KPS and NAB contend that Defendant's  first counterclaim "does not allege a single fact" to show that they committed tortious interference with contract.  Instead, they maintain that the only facts alleged concern OpCo's alleged commission of that tort.

[4]The Court agrees with Defendant.  Although some court decisions include language suggesting that "malice" is a necessary element of a claim for tortious interference with contract, overall the New York cases indicate that such is not the case. *See, White Plains Coat & Apron Co., Inc. v. Cintas Corp*., 8 N.Y.3d 422, 425, 835 N.Y.S.2d 530 (2007) ("Though long a part of our law, this commonly asserted tort continues to generate a spate of decisions, with sometimes varying views.").

[5]"[E]conomic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality." *Foster v. Churchill*, 87 N.Y.2d 744, 750, 642 N.Y.S.2d 583,  (1996).  However, the economic interest defense does not apply where the defendant had only "a generalized economic interest in soliciting business for profit," and "no previous economic relationship with the breaching party." *White Plains Coat & Apron Co., Inc. v. Cintas Corp*., 8 N.Y.3d 422, 425, 835 N.Y.S.2d 530 (2007).

DISCUSSION

The applicable legal standard for determining whether a complaint is sufficient to

survive a Rule 12(b)(6) motion is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain
> statement of the claim showing that the pleader is entitled to relief, in order
> to give the defendant fair notice of what the claim is and the grounds upon
> which it rests. While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of action
> will not do.  Factual allegations must be enough to raise a right to relief
> above the speculative level, on the assumption that all the allegations in the
> complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007); *see also*,

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To

survive dismissal, the plaintiff must provide the grounds upon which his claim rests through

factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting

*Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.

2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,'

which obliges a pleader to amplify a claim with some factual allegations in those contexts

where such amplification is needed to render the claim plausible[,]" as opposed to merely

conceivable.), *reversed on other grounds, Ashcroft v. Iqbal*, 129 S.Ct.1937 (2009).  When

applying this standard, a district court must accept the allegations contained in the

complaint as true and draw all reasonable inferences in favor of the nonmoving party.

*Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  Moreover, "[c]omplaints need not

anticipate, and attempt to plead around, potential affirmative defenses." *Davis v. Indiana

State Police*, 541 F.3d 760, 763 (7th Cir. 2008) (citations omitted).

Defendant is asserting a counterclaim for tortious interference with contract under New York law.   In sum, Defendant alleges that OpCo, NAB, and KPS committed the tort by purchasing HFBC's assets, knowing that such purchase would prevent HFBC from performing its contract with Boston Beer. *See, e.g.*, Answer and Counterclaims, Counterclaims ¶ 26 ("OpCo, NAB and KPS wrongfully interfered with the advantageous Production Agreement by stripping [HFBC] of substantially all of its operating assets, thereby rendering [HFBC] unable to perform its obligations under the Production Agreement.").

Under New York law,  "[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82 (1996) (citations omitted).   Here, for purposes of this motion, it is undisputed that a contract existed between Defendant and HFBC, that Movants were aware of the contract, that the contract was breached, and that Defendant sustained damages.   Consequently, the only issue is whether Defendant has sufficiently pleaded that Movants intentionally and improperly procured the breach.

 "[W]here there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior." *NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 621 (1996) (citations omitted).  According to the pertinent section of the Restatement (Second)

of Torts, deliberate or intentional interference may be shown where the defendant is

certain, or substantially certain, that his actions will result in a breach of the contract:

> *Intent and purpose*.  The rule stated in this Section is applicable if the actor
> acts for the primary purpose of interfering with the performance of the
> contract, and also if he desires to interfere, even though he acts for some
> other purpose in addition.  The rule is broader, however, in its application
> than to cases in which the defendant has acted with this purpose or desire.
> It applies also to intentional interference, as that term is defined in § 8A,[6] in
> which the actor does not act for the purpose of interfering with the contract
> or desire it but knows that the interference is certain or substantially certain
> to occur as a result of his action.  The rule applies, in other words, to an
> interference that is incidental to the actor's independent purpose and desire
> but known to him to be a necessary consequence of his action.

Restatement (Second) of Torts § 766, comment j (1979); *see also, Union Carbide Corp.*

*v. Montell N.V.*, 944 F.Supp. 1119, 1137 (S.D.N.Y. 1996) (Denying 12(b)(6) motion, where

allegations in pleading "provide[d] ample support for the inference that [defendant]  either

knew that its actions were certain or substantially certain to induce a breach . . . or acted

with the primary purpose of inducing a breach."); *@Wireless Enterprises, Inc. v. AI*

*Consulting, LLC*, No. 05–CV–6176 CJS(P), 2011 WL 1871214 at *11 (W.D.N.Y. May 16,

2011) ("A defendant intentionally procures a breach when he 'knows of a valid ... contract'

and 'commits an intentional act whose probable and foreseeable outcome is that one party

will breach the contract, causing the other party damage.'") (*quoting Leventhal v. Franzus*

*Co., Inc.*, No. 88 CIV. 3547(MBM), 1988 WL 132868 at *7 (S.D.N.Y. Dec. 6, 1988)).

On the other hand, a party does not induce or procure a breach of contract when

he "merely enters into an agreement with the other with knowledge that the other cannot

---

[6]"The word 'intent' is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it."  Restatement 2d Torts § 8A  (1979); *see also, id.*, comment b ("If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.").

perform both it and his contract with the third person." Restatement (Second) of Torts §

766, Comment n (1979).  On this point, the Restatement says:

> n. *Making agreement with knowledge of the breach*.  One does not induce
> another to commit a breach of contract with a third person under the rule
> stated in this Section when he merely enters into an agreement with the
> other with knowledge that the other cannot perform both it and his contract
> with the third person.  . . .  For instance, B is under contract to sell certain
> goods to C.  He offers to sell them to A, who knows of the contract.  A
> accepts the offer and receives the goods.  A has not induced the breach and
> is not subject to liability under the rule stated in this Secstion.

*Id*.

In this case, Movants allegedly committed the tort of tortious interference with

contract by purchasing HFBC's assets, which resulted in HFBC breaching the Production

Agreement with Defendant.   However, it is clear from the Defendant's Answer and

Counterclaims that OpCo's purpose in purchasing HFBC's assets was not to cause such

breach.  Instead, OpCo's purpose was to purchase HFBC's assets and operate a brewing

company.  In that regard, OpCo expressed an interest in assuming HFBC's rights under

the Production Agreement, but OpCo and Defendant could not agree on terms.  In the

Court's view, such facts fit squarely under the situation described in Comment n to

Restatement (Second) § 766, set forth above.  In other words, OpCo merely purchased

HFBC's assets, but not its obligations under the Production Agreement, knowing that

HFBC would not be able to perform the production agreement after it sold its assets to

OpCo.  On very similar facts, another District Court in this Circuit recently granted summary

judgment on a claim for tortious interference with contract.  *See*, *Planet Payment, Inc. v.

Nova Information Sys., Inc.*, No. 07-cv-2520 (CBA) (RML), 2011 WL 1636921 at *10-13

(Mar. 31, 2011) (Defendant was not liable for tortious interference with contract, where

defendant purchased a corporation's assets, but did not assume the corporation's agreement with a third party, and the corporation consequently was unable to perform its obligations under the agreement with the third party).[7]  Similarly, in this case the Court finds, as a matter of law, that Defendant has not pleaded a plausible claim for tortious interference with contract, since, at most, Movants entered a contract with HFBC, while knowing that HFBC could not perform both its contract with Movants and its contract with Defendant.

If the Court were to find that Defendant had sufficiently stated a claim for tortious interference, it would essentially mean that anytime a party purchased a company's assets without assuming the company's outstanding contractual liabilities, the party would be liable for tortious interference with contract to any third-parties whose agreements with the company were subsequently breached.  Such a holding would be inconsistent with the law in the state of New York. *See, Planet Payment, Inc. v. Nova Information Sys., Inc.*, 2011 WL 1636921 at *12 ("Generally, a party cannot be held liable for tortious interference for refusing to assume a contract.") (citing *Highland Capital Mgt. LP. v. Schneider*, 198 Fed. Appx. 41, 46 (2d Cir. 2006), other citation omitted); *see also, Beecher v. Feldstein*, 8 A.D.3d 597, 598, 780 N.Y.S.2d 153, 154 (2d Dept. 2004) (Defendant did not procure breach of lease between car dealership and dealership's patron, where Defendant purchased dealership but did not assume balance of auto lease, and relocated dealership. As the court held, the "defendant's actions did not procure and were merely incidental to the dealership's breach of the lease.").

---

[7]In addition to buying substantially all of the corporation's assets, the defendant in *Planet Payment* also required the corporation to sign a non-competition agreement, which further assured that the corporation would not be able to perform its obligations to the third party. *See, id*. at *3.

CONCLUSION

Defendant's second, third, and fourth counterclaims have been withdrawn by stipulation of the parties, and the application [#24]) to dismiss Defendant's third and fourth counterclaims is therefore denied as moot.  The application [#24] to dismiss Defendant's First Counterclaim is granted.

SO ORDERED.

Dated:        August 2, 2011
              Rochester, New York

                                              /s/ Charles J. Siragusa_____
                                              CHARLES J. SIRAGUSA
                                              United States District Judge